**In re Gilliam Ontario MOORE, Vanessa Annette Moore, Debtors.**

**Neil Stanley Stevens, Nancy Jean Stevens, Debtors.**

**Joanne Robinson Davis, Debtor.**

**Nos. 02–01514–5–ATS, 02–01515–5–ATS, 02–01546–5–ATS.**

United States Bankruptcy Court, E.D. North Carolina, Raleigh Division.

Sept. 30, 2002.

Marjorie K. Lynch, Jeffrey M. Cook, Raleigh, NC, for Bankruptcy Administrator.

Richard Lubetzky, Los Angeles, CA, Samuel J. Randall, IV, Wilmington, NC, for Charlie Anderson and We the People Document Services.

Harriet F. Worley, Leonard G. Green, Assistant Attorneys General, N.C. Dept. of Justice, Raleigh, NC, for State of North Carolina.

## ORDER REQUIRING CHARLIE ANDERSON, WE THE PEOPLE DOCUMENT SERVICES, AND WE THE PEOPLE FORMS & SERVICE CENTERS USA, INC. TO SHOW CAUSE

A. THOMAS SMALL, Bankruptcy Judge.

The matters before the court are the Bankruptcy Administrator's Motions to Determine Propriety of Petition Preparer Fees and Sanctions and for Entry of Show Cause Order regarding Charlie Anderson and We the People Document Services ("We the People"), and the motion of Charlie Anderson and We the People for Partial Dismissal of the Bankruptcy Administrator's Motion to Determine Propriety of Petition Preparer Fees and Sanctions Based on Lack of Jurisdiction Over Unauthorized Practice of Law. In her motions, the Bankruptcy Administrator is seeking a determination as to whether the fees charged by Mr. Anderson and We the People are excessive for the preparation of bankruptcy petitions, whether Mr. Anderson and We the People are providing services that constitute the unauthorized practice of law, and whether Mr. Anderson and We the People should be sanctioned for various other violations of 11 U.S.C. § 110. A hearing took place on September 10, 2002, in Raleigh, North Carolina.

## BACKGROUND

The chapter 7 petitions for relief and related schedules filed by the debtors, Gilliam Ontario Moore, Vanessa Annette Moore, Neil Stanley Stevens, Nancy Jean Stevens, and Joanne Robinson Davis, were prepared by the respondents, Charlie Anderson and We the People. Mr. Anderson is a franchisee of We the People Forms & Service Centers USA, Inc. ("We the People USA"), and operates a document preparation business in Raleigh, North Carolina. Mr. Anderson and We the People provide customers with services including the typing of certain legal forms, the provision of pamphlets to assist with the preparation of those forms, and delivery and filing of forms with the appropriate courts, as well as making a "supervising attorney" available to answer "general" legal questions. Mr. Anderson described the typical exchange with a customer desiring to file bankruptcy as beginning with a request for assistance in filing bankruptcy. Mr. Anderson asks for more specifics, and if a customer does not know which chapter he or she needs to file, Mr. Anderson explains that he cannot assist them in making that determination. He testified that he offers several options, including a review of the document catalog and suggesting that the customers seek legal advice. If a customer knows that he or she wishes to file a chapter 7 petition, Mr. Anderson presents the customer with a contract explaining the services of We the People. Mr. Anderson and We the People do not provide services for customers wishing to file chapter 13 petitions. Once the contract is signed and the fee

paid, Mr. Anderson provides a packet of materials including a questionnaire, a bankruptcy "overview," and a workbook designed to assist the customer with completing the questionnaire. These materials are prepared by We the People USA and are "reviewed and approved" by the franchisor's North Carolina counsel. *See* Exhibit 2 at 1. Mr. Anderson then sends the customer home to complete the questionnaire.

When the customer returns with the completed questionnaire, Mr. Anderson reviews it for legibility. If a space is left blank, Mr. Anderson inquires whether the customer intended to leave it blank. He testified that he does not advise the customer whether a blank must be completed; he only determines whether it was intended to be blank. Mr. Anderson then faxes the questionnaire to a typist in Nevada employed by We the People USA. After the typist transfers the information from the questionnaire to the forms to be filed with the court, she transmits them via e-mail to Mr. Anderson. Mr. Anderson then compiles the documents in the proper order, affixes "sign here" tabs in the appropriate places, and contacts the customer for review and execution of the documents. If the customer requests Mr. Anderson to copy the documents, he will do so for an additional charge of $15. Mr. Anderson will also file the documents with the court and obtain a filed-stamped copy of the documents for the customer. For these services, Mr. Anderson charges the customer $199.

Mr. Anderson testified that customers frequently have questions as they go through this process. He explained that he cannot advise the customers, but gives them options for finding answers. He tells them to read the material provided, or to contact an attorney. He also informs them that We the People has a "supervis-ing attorney" who is available for general questions at no extra cost to customers. Mr. Anderson testified that he tells customers that the "supervising attorney" cannot answer questions specific to their case, but that he can provide some general legal information. In addition, the materials provided by Mr. Anderson remind the customers that the "supervising attorney" is available to "chat" at no additional cost. Exhibit 2 at 7.

The Bankruptcy Administrator filed the instant motion to determine the propriety of the $199 fee, for sanctions for the failure to comply with certain requirements of 11 U.S.C. § 110, and for entry of a show cause order to determine if Mr. Anderson and We the People have violated any requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or other requirements of the court, have engaged in fraudulent, unfair or deceptive conduct, or engaged in the unauthorized practice of law. The North Carolina Attorney General moved to intervene to protect consumers from the unauthorized practice of law and other potentially deceptive conduct; this motion was allowed by separate order. All of the debtors in these cases have obtained their discharges, and there are no questions raised at this time regarding damages or problems suffered by the debtors. Mr. Anderson and We the People deny the allegations of the Bankruptcy Administrator and the Attorney General, and have challenged this court's jurisdiction on a number of grounds.

## PROCEDURAL ISSUES

This proceeding is in an unusual procedural posture. Clearly, the court may rule on a number of the Bankruptcy Administrator's requests, such as to determine the propriety of the petition preparer's fees and whether there have been violations of § 110, but because the motion seeks a

show cause order, a show cause order will be entered and Mr. Anderson and We the People will be given another opportunity to offer evidence.

Mr. Anderson and We the People have complained that they were not given proper notice of the issues to be considered at the hearing. Specifically, Mr. Anderson and We the People wanted to depose the Bankruptcy Administrator and the Attorney General for North Carolina to learn what allegations of misconduct they would be required to answer. The court denied the deposition requests, but stated that the hearing would be limited to the allegations in the Bankruptcy Administrator's motion.

This apparently is not the first time We The People's counsel, Richard Lubetzky, has raised this issue. In *In re Doser*, the bankruptcy court in Idaho observed

> This Court is privileged to serve with an extremely civil local bar. In his brief, Mr. Lubetzky, Ms. Scott's attorney from California, characterizes these proceedings as "akin to an ambush." (Citation omitted). To be sure, the Court is not accustomed to this sort of "hardball" advocacy. In the Court's opinion, counsel's choice of images adds little to the quality of his argument. The court presumes no disrespect was intended by the comment, and in deciding the issues, will focus solely on the merits of counsel's legal position.

*In re Doser*, 281 B.R. 292, 301 n. 10 (Bankr.D.Idaho 2002). The issues raised by the Bankruptcy Administrator should not be new to counsel for Mr. Anderson and We The People, as he has addressed the same issues in other proceedings in other districts around the country. *See,* *e.g., Id.; In re Boettcher,* 262 B.R. 94 (Bankr.N.D.Cal.2001). The court has heard extensive evidence from both parties, but, since no show cause order was entered, a show cause hearing will be held to permit Mr. Anderson and We The People to offer additional evidence and to once again answer the allegations. Furthermore, We The People USA will be required to show cause as well.

## CONSTITUTIONAL AND JURISDICTIONAL CHALLENGES

Mr. Anderson and We the People lodged several challenges to the court's reaching the merits of the Bankruptcy Administrator's motions, including whether § 110 exceeds Congress' authority under the Bankruptcy Clause of the United States Constitution, whether this court has subject-matter jurisdiction over § 110 violations under 28 U.S.C. § 1334, and whether this court has subject-matter jurisdiction over issues concerning the unauthorized practice of law. In support of their constitutional challenge, Mr. Anderson and We the People contend that the Bankruptcy Clause confers authority on Congress to regulate the administration of a bankruptcy estate, which is created only upon the filing of a petition. Because a bankruptcy petition preparer by definition does its work prior to the creation of a bankruptcy estate, Congress has exceeded its authority by attempting to regulate this pre-petition activity. Similarly, Mr. Anderson and We the People contend this court lacks jurisdiction to hear this matter because § 110 violations are non-core proceedings.[1] The preparation of the petition

---

**1.** In support of this argument, the respondents cite § 110(i)(1), which provides in relevant part that "if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court ... after a hearing, shall [impose sanctions.]" Under that section, this court clearly has the authority to determine whether the respondents have

has nothing to do with the administration of the estate, they argue, and cannot fall within the jurisdiction conferred under 28 U.S.C. § 1334.

■ The court disagrees. The petition has everything to do with the administration of a bankruptcy estate. The petition is essential to the proper operation of the bankruptcy process, and all parties suffer if a petition is improperly prepared. Congress clearly has the authority to regulate the preparation of the petition.[2] Similarly, because the petition and schedules are at the heart of the bankruptcy process, matters attendant to its preparation are "core" proceedings. Section 110 contains limitations on what a bankruptcy court may do to enforce its provisions, and in appropriate circumstances the bankruptcy court may certify issues to the district court.

■ Mr. Anderson and We the People next contend that this court does not have the authority to regulate the unauthorized practice of law. This court has addressed this issue before in *In re Davenport*, Case No. 99–01068–5–ATS (Bankr.E.D.N.C. August 31, 1999), finding that the giving of legal advice by a non-attorney constitutes an unfair practice, and may be a criminal act, under § 110. While the statute does not specifically mention the unauthorized practice of law, the court does have the ability to enjoin unfair or deceptive acts under § 110(j)(2)(A)(i)(III) and acts that may subject a person to criminal penalty under § 110(j)(2)(A)(i)(I). Consequently, the motion to dismiss that portion of the Bankruptcy Administrator's motion relat-

ed to the unauthorized practice of law is denied.

## WHO IS THE PREPARER?

■ Mr. Anderson testified that he meets face-to-face with his customers, provides them with the contract and materials, reviews their completed workbook for legibility and completeness, and secures the customers' signatures on the completed forms. The information provided by the customers in the workbook (which is "not identical" to the official forms, according to Mr. Anderson's testimony) is actually transferred from the workbook to the official forms by a typist in Nevada employed by We the People USA. Mr. Anderson does not participate in the actual preparation of the forms, and does not know how the information is transferred from the workbook to the official forms. Mr. Anderson pays We the People USA 25% of the fees he receives, an undisclosed franchise fee, and $200 for the "supervising attorney."

The Bankruptcy Code defines a "bankruptcy petition preparer" to include "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing ...." 11 U.S.C. § 110(a)(1). When asked why Mr. Anderson lists himself as the preparer, as opposed to We the People USA, Mr. Anderson testified that he has the contact with the customers. Nothing in the Code limits the definition to the individual who meets with the customer. This court shares the concerns expressed by Chief Bankruptcy Judge Jim D. Pappas in *In re*

violated the section or committed an unfair or deceptive act. It is for the district court, however, to impose the monetary sanctions set forth in the statute.

2. The respondents raised a question regarding whether the United States Attorney General should have been notified of a constitutional

challenge to this provision of the Bankruptcy Code. Because the court is not finding the provision to be unconstitutional, but is instead going forward, no notice is required at this time. Any appeal of this issue will be noticed to the Attorney General.

*Doser,* 281 B.R. at 303–304, that the franchisor and franchisee are engaged in a joint enterprise. Because Mr. Anderson splits the fee for his services with We the People USA, and because it is the employees of We the People USA who actually complete the official forms, We the People USA certainly falls within the statutory definition of "bankruptcy petition preparer." We the People USA has not filed the disclosures required in these cases, and may itself be in violation of § 110.

It appears from the testimony and documents before the court that We the People USA "has in large part dictated the manner in which [Mr. Anderson] operates, and by its conduct, has played an active role in each bankruptcy case handled by [Mr. Anderson], to the point of actually preparing the substance of the final bankruptcy papers for filing in this District." *Id.* at 304. It also appears that these practices may be deceptive to Mr. Anderson's customers, who may not understand that Mr. Anderson does not participate in the preparation of any of the materials, and instead only reviews them for legibility and completeness, arranges for their signatures, and delivers the papers to the court.

We the People USA was not a party to the prior proceedings, and is entitled to respond to the court's preliminary observations. Consequently, We the People USA will be directed to appear and show cause why it should not be sanctioned for violations of § 110. Specifically, those violations include the failure to sign and print its name and address on the documents prepared for filing as required by § 110(b); the failure to provide a social security number of the individual who pre-

pared the document as required by § 110(c); and the failure to file a declaration of fees as required by § 110(h). We the People USA must also appear and show cause why its activities are not unfair and deceptive practices or acts that subject it to criminal penalty under § 110(j)(2)(A)(i).

### PROPRIETY OF FEES

■ The Bankruptcy Administrator contends that $199 is an excessive fee for the preparation of a bankruptcy petition and schedules. Mr. Anderson testified that he provides a valuable service by making it possible for customers to have their petitions prepared, including providing the location, materials, and a completed document, as well as delivery of the documents to the court.[3] He also testified that having the supervising attorney available for questions is "added value" to his service. While Mr. Anderson may provide services that he believes justify his charging more than other bankruptcy petition preparers, § 110 does not allow him to charge for those services. *See In re Bush,* 275 B.R. 69, 84–85 (Bankr.D.Idaho 2002).

A BPP can rightfully perform for debtors only the modest service of transcribing or typing bankruptcy forms that the debtors alone must prepare without assistance. The development of the law makes clear that other sorts of services are improper, and those services can *perforce* not be compensated. The charging of a fee which is in excess of the value of a BPP's properly limited services can, in and of itself, mislead debtors into believing that they are re-

---

3. It is worth mentioning that there is no requirement that bankruptcy forms be typed. The court frequently receives handwritten materials. In addition, the Official Forms are available at no cost on the court's website. It is possible for a debtor to file for bankruptcy

protection without spending any money on forms or form completion, assuming that he or she has access to the internet. If a person does not have internet access, forms can be purchased at most stationery stores.

ceiving (or are entitled to receive) services in excess of what § 110 actually allows.

\* \* \* \* \* \*

The Court concludes that the proper reference point is what professional typists or word processors would charge. These are the kinds of services most comparable to what a BPP may legally do.

*Id.*

Mr. Anderson testified that he obtained an estimate from a typist to prepare the debtors' petitions and schedules, and that the typist, based on three hours of work at $40 per hour, would charge $120 for each set of documents for the three cases at issue. He also testified that the estimate was received from a typist who does not regularly type bankruptcy documents, and the estimate is based on the use of a regular typewriter, not a computer with a software program such as most attorney's offices use.[4] In addition, it is fair to infer that once a typist became familiar with the bankruptcy documents, it would take something less than three hours to type the documents. It is also significant that Mr. Anderson testified that he remits approximately $50 to We the People USA for each document the typist in Nevada prepares, or 25% of each fee he collects. The fee actually paid to We the People USA for the typing service is also evidence of the value of the typing service itself.

█ The court finds that the $199 fee is excessive, and that $80 is a reasonable fee for the services Mr. Anderson and We the People are permitted to perform. The court notes that other courts have criti-cized and sanctioned We the People franchises for engaging in inappropriate practices and charging excessive fees. *See In re Evans,* 153 B.R. 960 (Bankr.E.D.Pa. 1993) (holding that fee charged by a We the People, Tampa, franchisee operating in Pennsylvania was excessive, and reducing it to $100 under § 329); *In re Doser,* 281 B.R. 292 (Bankr.D.Idaho 2002) (allowing $90 for document preparation services).

Mr. Anderson and We the People will be directed to appear and show cause why they should not be required to refund the difference between $199 and $80 to the debtors.

## VIOLATIONS OF § 110

In her motions, the Bankruptcy Administrator alleged the following violations of the Bankruptcy Code and Rules:

- The forms did not contain the certification language required by the Official Bankruptcy Forms and Rule 9009 of the Federal Rules of Bankruptcy Procedure.

- The preparers did not execute a certification of the debtors' Statement of Intention, the Statement of Financial Affairs, or the Declaration Concerning Debtor's Schedules, in violation of § 110(b).

- Mr. Anderson did not provide his social security number on the documents in violation of § 110(c).

- The preparers did not file a statement of compensation within 10 days of filing the petition in violation of § 110(h).

Mr. Anderson and We the People contended that the failure to include the certifica-

---

**4.** Because Mr. Anderson did not know how the information is transferred from the questionnaire to the documents he receives from Nevada, there is no direct evidence whether the We the People USA typist uses software or a manual typewriter. However, the fact that she transmits the documents back to Mr. Anderson via e-mail is some indication that the documents are completed by computer. In addition, a review of the documents shows that the typeface appears to be computer-generated, and not typed.

tion was due to a software glitch, which has since been corrected. Mr. Anderson also believed that providing the company's federal tax identification number met the requirement of providing his social security number, and he has provided his own number since learning of his mistake. Finally, according to Mr. Anderson, the failure to include the statement of compensation was due to an oversight.

Mr. Anderson does not deny these violations and has taken steps to see that they are corrected. However, the violations are both serious and numerous, and a sanction is required. The court is authorized to impose a sanction of up to $500 for each offense, § 110(b)(2), (c)(3), and (d)(1), but the sanction the court intends to impose against Mr. Anderson and We the People is a warning. Should Mr. Anderson fail to comply with the requirements of § 110 in the future, a more serious sanction will be imposed. We the People USA has not corrected its violations of § 110, and the court intends to impose a sanction of $500 for each violation.

## UNAUTHORIZED PRACTICE OF LAW

### Supervising Attorney

■ We the People USA maintains a "supervising attorney" in North Carolina whose role, according to that attorney, is to supervise Mr. Anderson and the other franchisees to make sure they comply with the franchise compliance manual, to make sure they do not engage in the unauthorized practice of law, and to field calls from We the People customers. Mr. Anderson pays the franchisor $200 per month to compensate for services he or his customers might receive from the supervising attorney. Samuel J. Randall, IV, is the supervising attorney for Mr. Anderson's franchise.[5] Mr. Randall testified that he does not keep a record of calls received from We the People customers, and that he is not required to account for those calls to We the People USA. He considers the fielding of these calls to be a minor part of his representation of We the People USA. Mr. Randall is not a bankruptcy expert; in fact, he testified that his only training in this area of the law is a course he took in law school. He does not have any bankruptcy-related clients other than We the People USA, for whom he mostly does corporate and transactional work.

In addition to Mr. Anderson's suggestion to clients that Mr. Randall is available for calls, the We the People "Bankruptcy Overview" refers customers to Mr. Randall's services:

The bankruptcy law regarding the scope of a Chapter 7 discharge is complex. Know your rights. **Should you have any doubts about the appropriateness of bankruptcy in your particular case, you should seek the advice of an attorney.**

In addition, don't forget that you enjoy the right, as a WE THE PEOPLE customer, to chat with our Supervising Attorney, at no additional cost to you.

Exhibit 2 at 7 (emphasis in original). Mr. Randall's name also appears on We the People documents, and it is represented that these documents have been "reviewed and approved" by him. Notwithstanding that representation, Mr. Randall testified

---

**5.** Mr. Randall and Mr. Lubetzky appeared at the hearing on behalf of Mr. Anderson and his Raleigh franchise, but Mr. Anderson testified that neither had represented him on any matter other than the defense of the Bankruptcy Administrator's motion. Mr. Randall is on retainer with We the People USA; presumably Mr. Lubetzky is also an attorney regularly employed by the franchisor since he has appeared on behalf of other franchisors around the country defending similar challenges.

that he does not really know if the information contained in those documents is correct.

Mr. Randall testified that when We the People customers call him, he provides them with "general legal information;" for example, "what is an exemption." In a specific case, Mr. Stevens called him after his 341 meeting because the trustee had a question about Mr. Stevens' attempt to claim four vehicles as exempt. Mr. Randall suggested that Mr. Stevens "wait and see" what happens, and informed Mr. Stevens that the exemption is for one vehicle, and if he put down ten vehicles, the trustee could come get them and sell them to creditors. When asked if this sounded like "legal advice" to him, Mr. Randall said that he did not couch the advice as, "This is what's going to happen in your case."

Mr. Randall also testified that as an attorney, he can give legal advice if he chooses.

> I do not give the people in their individual cases specific advice. I kind of couch it in general terms of this is what the law is and hope that they can use the general information that I give them in order to solve their specific problem.

Mr. Randall was later asked what he would tell a customer who gives him information from which he could glean that the customer should not file a chapter 7 petition.

> Would I specifically tell them? No. Might I give them general legal advice in an effort for them to figure that out for themselves? Yes.

When asked how he would handle customers with exigent circumstances, such as a pending foreclosure, Mr. Randall testified that he would couch his response in general terms, explaining, "This is what the Bankruptcy Code does; you have the automatic stay." Mr. Randall said that his role is "not to hold their hands and walk them through," but to "assist them in assisting themselves."

The court is concerned with the relationship between Mr. Randall and Mr. Anderson's customers. Mr. Randall represents neither Mr. Anderson nor his customers. He supervises Mr. Anderson on behalf of We the People USA, and reviews the documents handed out by Mr. Anderson to his customers. While Mr. Randall testified that the customers are not his clients, the We the People materials and Mr. Anderson both refer customers to Mr. Randall. The Overview does not in any way suggest that Mr. Randall's services are limited. And while Mr. Randall testified that he gives only "general legal information," some of the advice he gives certainly seems to be tailored to a specific case.

This court agrees with the analysis of the bankruptcy court in Idaho, which found

> In the Court's opinion, the customers' "right" to "chat" with the attorney about "general questions" should provide them little comfort, and adds no real value to [the franchisee's] services. Instead, the Court concludes this arrangement may lead her customers to believe that, because of the association of an attorney with the process, [the franchisee's] approach to processing their bankruptcy forms is more beneficial and reliable than others providing similar services. Any such reliance is illusory in several respects.

*Doser*, 281 B.R. at 305. The Idaho bankruptcy court went on to note that having an attorney review the content and form of the bankruptcy forms used is illusory, since the forms are prescribed by the Judicial Conference of the United States. *Id.* In addition, if the attorney is truly only giving "general" information, the attorney

is of no greater value than any information the customers could receive at the library. *Id.* at 306. On the other hand, if the attorney is giving specific legal advice, he is almost certainly violating several rules of professional conduct as well as the disclosure requirements of the Bankruptcy Code. *Id.*

> [E]ven assuming in this instance the lawyer is acting with appropriate restraint, the Court concludes [the franchisee's] customers are potentially mislead by this arrangement. While customers are encouraged to exercise their "right" to "chat" with the lawyer about their bankruptcy problems, no attempt is made to inform them they can not, and in fact should not, rely upon the lawyer's advice in the traditional manner where a client seeks counsel from an attorney. Absent the existence of an attorney-client relationship, [the franchisee's] customers are at risk if they think they are receiving reliable, personal guidance about bankruptcy law.

*Id.* Like Judge Pappas, this court believes that Mr. Anderson's and We the People's method of referring customers to Mr. Randall (or any other "supervising attorney") is deceptive and unfair and violates § 110. As a result, Mr. Anderson, We the People and We the People USA will be directed to appear before the court and show cause why they should not be enjoined from touting and offering the services of a "supervising attorney" to their customers.

**Documents Provided by We the People**

 Mr. Anderson testified that the package of materials provided to customers includes a "Customer Information Workbook" ("Workbook," Exhibit 1 beginning on p. 2), a "Bankruptcy Overview" ("Overview," Exhibit 2), and a "Step by Step Guide to the Bankruptcy Workbook" ("Guide," Exhibit 3). In addition, some

customers have received "Tips on Filing a Chapter 7 Bankruptcy" ("Tips," Exhibit 4), though Mr. Anderson could not say with certainty whether any of the debtors in theses cases received the Tips. These documents are all created by and provided to Mr. Anderson by We the People USA, and all of them have been reviewed by Mr. Randall. The Workbook and Guide attempt to clarify the information required on the official petition and schedules; however, the Bankruptcy Administrator expressed some concern that some of the "clarifications" are both incorrect and constitute legal advice. For example, both sets of documents ask a debtor whether he or she wishes to "Reaffirm (Keep) or Surrender (Give Up)" property. Not only are the parentheticals oversimplifications of the concepts of reaffirmation and surrender, but the purported clarifications may lead a debtor to choose how to treat his or her property incorrectly. Similarly, some of the instructions are interpretations that cannot be found within the Official Forms; for example, asking for the "quick sale" value of property where the Official Forms ask for "value," or limiting "animals" to "farm, not pets" where the Official Forms contain no such limitation.

Mr. Anderson and Mr. Randall have met with the Bankruptcy Administrator in an effort to revise the documents to meet her concerns regarding incorrect information and definitions. But, even if the documents are correct, the Bankruptcy Administrator maintains additional concerns that the documents themselves constitute legal advice.

In addition, many of the documents include information that does not relate to completing the required forms, but instead advises debtors on other concerns in the bankruptcy process. For example, the Tips sheet (which has been reviewed by Mr. Randall) advises debtors who are ex-

pecting a federal tax refund to wait until the refund is received and spent before filing chapter 7. The Tips sheet also advises debtors that "[i]f at all possible, your expenses (after your debts are discharged) should be close to your income." Exhibit 4. It goes on to explain that $350 in excess income "may be enough" for the trustee to require a conversion to chapter 13. *Id.* Similarly, the Overview includes nearly two pages of advice for attending the 341 meeting and how to handle an abusive trustee. The Overview also gives advice for rebuilding credit after filing bankruptcy.

■ Several courts have expressed concerns that the type of documents provided by Mr. Anderson and We the People contain legal advice,[6] but the court is not in the business of regulating publishers, and does not review other books on bankruptcy to determine whether they contain legal advice or inaccuracies. However, the court does regulate the services Mr. Anderson provides under § 110. As described above, § 110 allows a bankruptcy petition preparer to type bankruptcy forms. It does not allow the preparer to provide documents that explain bankruptcy or how to complete the required information that the preparer is then to transfer to the official forms. These documents may not be included as part of the services provided by a petition preparer, and Mr. Anderson cannot be compensated for providing these materials to his customers in connection with his services. *See In re Agyekum,* 225 B.R. 695, 702 (9th Cir. BAP 1998). In addition, it is unfair and deceptive to include these materials with a petition preparer's services because it gives the false impression that these documents are all that is required for the customer to decide whether to file and how to complete the forms. Whether Mr. Anderson can sell these documents in his store at all is not before the court, but he cannot provide them in connection with the contract to prepare bankruptcy petitions and schedules.

Consequently, Mr. Anderson, We the People, and We the People USA will be directed to appear and show cause why they should not be enjoined from providing these documents to customers in connection with their petition preparation services.

**CONCLUSION**

Based on the foregoing, **We the People USA is directed to appear on Wednesday, November 20, 2002, at 11 a.m. at the U.S. Bankruptcy Court, U.S. Courthouse and Post Office Building, 300 Fayetteville Street Mall, Room 208, Raleigh, North Carolina and show cause why it should not be sanctioned for the following violations of § 110:**

- **failure to sign and print its name and address on the documents prepared for filing as required by § 110(b);**
- **failure to provide a social security number of the individual who prepared the document as required by § 110(c); and**
- **failure to file a declaration of fees as required by § 110(h).**

**We the People USA is further directed to appear and show cause why its activi-**

6. Some courts have found these or similar documents, or even the act of directing customers to specific legal publications, to constitute the unauthorized practice of law. *See Doser,* 281 B.R. at 306–310; *In re Bush,* 275 B.R. 69 (Bankr.D.Idaho 2002) and cases cited therein; *In re Boettcher,* 262 B.R. 94 (Bankr. N.D.Cal.2001); *In re Evans,* 153 B.R. 960 (Bankr.E.D.Pa.1993); *Hastings v. United States Trustee (In re Agyekum),* 225 B.R. 695 (9th Cir. BAP 1998).

ties should not be enjoined as unfair and deceptive practices or acts that subject it to criminal penalty under § 110(j)(2)(A)(i).

Charlie Anderson and We the People are directed to appear on Wednesday, November 20, 2002, at 11 a.m. at the U.S. Bankruptcy Court, U.S. Courthouse and Post Office Building, 300 Fayetteville Street Mall, Room 208, Raleigh, North Carolina and show cause why they should not be required to refund the difference between $199 and $80 to the debtors, Gilliam and Vanessa Moore, Neil and Nancy Stevens, and Joanne Davis.

Charlie Anderson and We the People are directed to appear on Wednesday, November 20, 2002, at 11 a.m. at the U.S. Bankruptcy Court, U.S. Courthouse and Post Office Building, 300 Fayetteville Street Mall, Room 208, Raleigh, North Carolina and show cause why a warning should not be imposed for (1) his failure to provide the certification language required by the Official Bankruptcy Forms and Rule 9009 of the Federal Rules of Bankruptcy Procedure; (2) his failure to execute a certification of the debtors' Statement of Intention, the Statement of Financial Affairs, or the Declaration Concerning Debtor's Schedules, in violation of § 110(b); (3) his failure to provide his social security number on the documents in violation of § 110(c); and (4) his failure to file a statement of compensation within 10 days of filing the petition in violation of § 110(h).

Charlie Anderson, We the People, and We the People USA are directed to appear on Wednesday, November 20, 2002, at 11 a.m. at the U.S. Bankruptcy Court, U.S. Courthouse and Post Office Building, 300 Fayetteville Street Mall, Room 208, Raleigh, North Carolina and show

cause why they should not be enjoined from touting and offering the services of a "supervising attorney" to their customers.

Charlie Anderson, We the People, and We the People USA are directed to appear on Wednesday, November 20, 2002, at 11 a.m. at the U.S. Bankruptcy Court, U.S. Courthouse and Post Office Building, 300 Fayetteville Street Mall, Room 208, Raleigh, North Carolina and show cause why they should not be enjoined from providing the Customer Information Workbook, Bankruptcy Overview, Step by Step Guide to the Bankruptcy Workbook, and Tips on Filing a Chapter 7 Bankruptcy to their customers in connection with their petition preparation services.

Mr. Anderson and We the People are further directed to provide the court with a list of all chapter 7 petitions filed by Mr. Anderson and We the People in the Eastern District of North Carolina, Raleigh Division, by October 30, 2002, including the names of the debtors, the case numbers, and the dates filed.

**SO ORDERED.**