**In re Gilliam Ontario MOORE, Vanessa Annette Moore, Debtors.**

**In re Neil Stanley Stevens, Nancy Jean Stevens, Debtors.**

**In re Joanne Robinson Davis, Debtor.**

**Nos. 02–01514–5–ATS, 02–01515–5–ATS, 02–01546–5–ATS.**

United States Bankruptcy Court, E.D. North Carolina, Raleigh Division.

March 20, 2003.

---

Marjorie K. Lynch, U.S. Bankruptcy Administrator, Jeffrey M. Cook, Raleigh, NC, for Bankruptcy Administrator.

Harriet F. Worley, Leonard G. Green, Assistant Attorneys General, Raleigh, NC, for the State of North Carolina.

Richard Lubetzky, Los Angeles, CA, Samuel J. Randall, IV, Wilmington, NC, Charles F. Vihon, Western Springs, IL, for Charlie Anderson and We the People Document Services.

## ORDER REGARDING SHOW CAUSE HEARING

A. THOMAS SMALL, Bankruptcy Judge.

On September 30, 2002, the court entered an order requiring Charlie Anderson, We the People Document Services, and We the People Forms & Service Centers, USA, Inc. to show cause. *In re Moore*, 283 B.R. 852 (Bankr.E.D.N.C. 2002). A hearing took place in Raleigh, North Carolina on November 20, 2002, and the parties requested an opportunity to submit post-hearing briefs. The court has received several hours of testimony, over one hundred pages of documentary evidence, and briefs from all parties, and this matter is ready for determination.

## BACKGROUND

The Bankruptcy Administrator filed Motions to Determine Propriety of Petition Preparer Fees and Sanctions and for Entry of Show Cause Order regarding Charlie Anderson and We the People Document Services ("We the People"). The North Carolina Attorney General intervened due to his interest in protecting consumers from the unauthorized practice of law and other potentially deceptive conduct, and a hearing took place on September 10, 2002. The background of the motions and the court's initial findings based on the evi-

dence presented at the hearing on September 10 are set forth in detail in the show cause order and will not be repeated here; this order should be read in tandem with the show cause order of September 30, 2002. Essentially, the evidence showed that Mr. Anderson and We the People, operating as a franchisee of We the People Forms & Service Centers USA, Inc. ("We the People USA"), provide customers with services including the typing of certain legal forms, the provision of pamphlets to assist with the preparation of those forms, and delivery and filing of forms with the appropriate courts, as well as making available a "supervising attorney" to answer "general" legal questions. It appeared to the court that We the People USA also acted as a bankruptcy petition preparer as defined in 11 U.S.C. § 110(a)(1).

Based on the evidence presented at the September 10 hearing, the court entered an order on September 30, 2002, requiring the following:

> We the People USA is directed to appear ... and show cause why it should not be sanctioned for the following violations of § 110:
>
> ● failure to sign and print its name and address on the documents prepared for filing as required by § 110(b);
> ● failure to provide a social security number of the individual who prepared the document as required by § 110(c); and
> ● failure to file a declaration of fees as required by § 110(h).
>
> We the People USA is further directed to appear and show cause why its activities should not be enjoined as unfair and deceptive practices or acts that subject it to criminal penalty under § 110(j)(2)(A)(i).
>
> Charlie Anderson and We the People are directed to appear ... and show cause why they should not be required to refund the difference between $199 and $80 to the debtors, Gilliam and Vanessa Moore, Neil and Nancy Stevens, and Joanne Davis.
>
> Charlie Anderson and We the People are directed to appear ... and show cause why a warning should not be imposed for (1) his failure to provide the certification language required by the Official Bankruptcy Forms and Rule 9009 of the Federal Rules of Bankruptcy Procedure; (2) his failure to execute a certification of the debtors' Statement of Intention, the Statement of Financial Affairs, or the Declaration Concerning Debtor's Schedules, in violation of § 110(b); (3) his failure to provide his social security number on the documents in violation of § 110(c); and (4) his failure to file a statement of compensation within 10 days of filing the petition in violation of § 110(h).
>
> Charlie Anderson, We the People, and We the People USA are directed to appear ... and show cause why they should not be enjoined from touting and offering the services of a "supervising attorney" to their customers.
>
> Charlie Anderson, We the People, and We the People USA are directed to appear ... and show cause why they should not be enjoined from providing the Customer Information Workbook, Bankruptcy Overview, Step by Step Guide to the Bankruptcy Workbook, and Tips on Filing a Chapter 7 Bankruptcy to their customers in connection with their petition preparation services.

283 B.R. at 863–64.

Mr. Anderson filed a motion for relief from the show cause order on November 15, 2002, contending that the court does not have the authority *sua sponte* to command We the People USA to appear, that

We the People USA is not a bankruptcy petition preparer, and that the matter of the "supervising attorney" was not addressed in the original motions and therefore should not be considered by the court. Whether the court has the authority to issue an injunction absent an adversary proceeding was also addressed at the hearing on November 20 and in the post-hearing briefs. These matters are addressed as preliminary issues, because they must be decided before the court can consider the substantive issues set forth in the show cause order.

## PRELIMINARY ISSUES AND FINDINGS

### *Sua Sponte* Order Regarding We the People USA

■ The Bankruptcy Administrator filed her original motion to show cause related to Mr. Anderson and We the People based on the information she had available: the debtors' petitions. The motion was proper as filed, and the court notes that the court could itself have initiated the same inquiry *sua sponte*. Not until the hearing on September 10, 2002, did the Bankruptcy Administrator and the court become aware of We the People USA and its role in the preparation of the petitions as well as the fact that it provides all of the documents and the "supervising attorney" for Mr. Anderson's and his customers' use. To the extent the hearing revealed evidence of violations of § 110 by other parties, it is proper for the court to expand the show cause order. Furthermore, because We the People USA was not a party to the first hearing, the show cause order outlined the allegations against each party in detail to allow the respondents to

defend fully the allegations against them.[1] Consequently, the motion for relief based on the court's alleged lack of authority to bring We the People USA before the court *sua sponte* is denied.

### Consideration of "Supervising Attorney" Issues

■ Mr. Anderson similarly contends that the court should not consider any issues regarding the use of the "supervising attorney" because such use was not raised in the original motion. As with the evidence regarding the franchisor, the information about the supervising attorney was not generally known prior to the hearing on September 10. Once the potential issues arising out of the use of the supervising attorney were identified, the court outlined the problems in detail in its order and provided the parties with an opportunity to present further evidence on the specific issues identified by the court at the hearing on November 20, 2002. As a result, the motion for relief from the show cause order as to the matter of the "supervising attorney" is denied.

### Authority to Enter Injunctive Relief

■ Mr. Anderson's final legal challenge is whether the court has the authority to issue an injunction absent the commencement of an adversary proceeding by one of the parties identified in § 110(j). Section 110(j) provides that a debtor, the trustee, a creditor, or the United States trustee "may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer." Mr. Anderson contends that a civil action by one of the

---

1. The attorneys appearing on behalf of Mr. Anderson and We the People at the September 10 hearing were actually employed by We the People USA, providing further opportunity for We the People USA to have been fully informed as to the proceedings and the evidence presented that implicated it as a bankruptcy petition preparer.

listed parties is the *only* mechanism through which the court may issue an injunction, and further contends that a "civil action" must be an adversary proceeding in this court.

The court finds the use of the word "may" significant. It suggests that the commencement of a civil action by the enumerated parties is a permissible mechanism for seeking injunctive relief. Without discussion of the "civil action" issue, the United States Bankruptcy Court for the Southern District of Ohio permanently enjoined an individual bankruptcy petition preparer and his company from acting as bankruptcy petition preparers and engaging in the unauthorized practice of law on *motion* of the U.S. Trustee. *In re Brokenbrough*, 197 B.R. 839 (Bankr.S.D.Ohio 1996).

The Ninth Circuit Bankruptcy Appellate Panel has addressed the "civil action" issue directly, and held that "[t]he fact that Congress gave statutory standing to debtors, creditors, trustees, and U.S. trustees does not ... preclude the bankruptcy court from raising the § 110(j) injunction issue by way of an order to show cause." *Demos v. Brown (In re Graves)*, 279 B.R. 266, 273 (9th Cir. BAP 2002) (citing *In re Gabrielson*, 217 B.R. 819, 823 (Bankr. D.Ariz.1998)). The court held further that

> [a] bankruptcy court acting on its own motion in a matter that ordinarily requires an adversary proceeding must, in deference to principles of due process, assure that the defendant is afforded the procedural protections that inhere in an adversary proceeding because the rules of procedure generally define what process is due.

*Id.* at 274. In *Graves*, the BAP found that the due process requirements were not met. The bankruptcy court had permanently enjoined the bankruptcy petition preparer without hearing from the prepar-

er because he did not appear at the status hearing and did not file any paper in response to the court's notice that it would consider imposing fines for violations of § 110. The bankruptcy court also failed to provide notice that it would consider injunctive relief. The *Graves* court cautioned:

> In order to pass muster as constitutional due process notice, the notice was required to, and did not, apprise [the bankruptcy petition preparer] of, and permit [the bankruptcy petition preparer] adequate preparation for, a hearing on a permanent injunction. (Citation omitted).
>
> \* \* \* \* \* \*
>
> ... If there had been a hint of an injunction, then we would need to consider the factual context, including timeliness and specificity in light of Bankruptcy Code and rules provisions, in order to determine whether there is a constitutional violation.

*Id.* at 276.

Review of the procedures employed in this case shows that the respondents were afforded substantial due process. The Bankruptcy Administrator's motion set forth the general allegations that she believed would support a show cause order. Mr. Anderson and We the People appeared for the hearing on September 10, 2002, and presented several hours of testimony, some of which raised issues not outlined in the original motion. The court issued a detailed show cause order, identifying the evidence it found persuasive regarding potential § 110 violations by Mr. Anderson, We the People, and We the People USA. The court further detailed the potential consequences for the violations, including possible injunctions related to the use of certain documents and the use of a "supervising attorney." A hearing

date was set nearly two months after the show cause order was entered, and the respondents were allowed the opportunity to present any further evidence to show the court why sanctions and an injunction should not be issued. A hearing was held and the parties were permitted to submit post-hearing briefs. Certainly this meets the constitutional requirements for due process. Consequently, the court finds that it does have the power to issue injunctive relief in this case.

## Is We The People USA a Bankruptcy Petition Preparer?

 The parties stipulated that the record from the hearing on September 10 is part of the record for the show cause hearing held on November 20. During the hearing on November 20, Mr. Anderson and We the People USA presented additional evidence only on the issue of whether We the People USA is a bankruptcy petition preparer as defined by § 110(a)(1). Mr. Anderson generally testified that the franchise and other fees paid to We the People USA are paid from the business operating account, and the source of funds for that account includes both personal loans and fees collected from customers. Jason Searns, the general counsel for We the People USA, testified that the franchise fee is paid for the right to use the We the People business name, the trademarks, the intellectual property, and ongoing support services including document processing, training, the ongoing use of the supervising attorney, and general administrative functions. He further testified that the parties do not intend to operate as a joint venture, nor is there a principal-agent relationship. Mr. Searns also testified that the fee paid to We the People USA is calculated as 25% of the fees charged by the franchisee to its clients.

In essence, Mr. Searns' testimony was consistent with Mr. Anderson's prior testimony at the hearing on September 10. However, Mr. Searns testified that while a We the People USA employee actually types the petitions, the employee does so "at the direction of the franchisee." This is in direct contradiction to Mr. Anderson's testimony. Mr. Anderson testified that the customers submit information in a workbook provided to them by Mr. Anderson that is "not identical" to the official forms. He then transmits the workbook to the We the People typist. The typist transfers the information from the workbook to the official forms, and Mr. Anderson's attorney very specifically elicited from Mr. Anderson that he does not know how the information is transferred.[2] The official forms are e-mailed back to Mr. Anderson, and if there are any corrections requested by the customers, Mr. Anderson contacts the typist to have the corrections made. Mr. Anderson does not have discretion whether or not to use the We the People USA typist for preparation of the petitions.

We the People USA contends that word processing is only one part of the "bundle of services" purchased by the customer. When pushed, however, counsel stated that the bundle of services includes the good will, impressions and attributes of the name: clearly, these are the services

---

**2.** Counsel contends that the use of the corporate franchisor as a word processor is no different than using an outside typist or secretarial service. Because the information written by the customers in the workbook differs from the official forms, however, someone must determine how to translate the workbook information into the data requested by the official forms. Mr. Anderson testified that he does not know how the information is transferred. Clearly, these decisions go beyond the services of an outside typist or secretary, and Mr. Anderson's testimony shows that he does not direct the preparation of the forms.

purchased by the franchisee from the franchisor, not by the customer from the franchisee. The customer is purchasing, in essence, the word processing service. This service is provided by We the People USA, not Mr. Anderson. We the People USA further compared its franchise relationship to that of a fast food restaurant, noting that the franchisors direct how the food is to be prepared, as well as other detailed instructions on how the business is operated. The analogy would be a valid one if We the People USA provided the software for the document preparation to its franchisees, instead of the word processing service. The actual function of the franchisor here is more akin to actually cooking the food itself than providing specific instructions on how the food is to be prepared.

The Bankruptcy Code defines a "bankruptcy petition preparer" to include "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing . . . ." 11 U.S.C. § 110(a)(1). It is the employees of We the People USA who actually complete the official forms, and Mr. Anderson remits 25% of the fees he collects from his customers to We the People USA. We the People USA clearly falls within the statutory definition of bankruptcy petition preparer.[3] Whether the funds are paid to We the People USA on a monthly basis from a co-mingled account does not change the fact that for each petition that is prepared by We the People USA, Mr. Anderson pays a fee to the corporation. As a result,

We the People is required to comply with the requirements set forth in § 110, which it has failed to do.

## SECTION 110 VIOLATIONS

The Bankruptcy Administrator presented evidence on September 10 that the court deemed sufficient to support issuance of a show cause order. Once the show cause order was issued, the respondents were given a second opportunity to refute the Bankruptcy Administrator's evidence. Mr. Anderson, We the People, and We the People USA presented no evidence at the hearing on November 20 other than to dispute the contention that We the People USA is a bankruptcy petition preparer. Accordingly, the court will reconsider its findings in the order of September 30, 2002, in light of the arguments presented at the hearing on November 20 and in the post-hearing briefs.

### Propriety of Fees

■ Section 110(h)(2) provides that "[t]he court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared." In its show cause order, the court found that the $199 fee (which does not include an optional $15 for photocopies) charged by Mr. Anderson is excessive, and ordered Mr. Anderson and We the People to appear and show cause why it should not be required to refund the difference between $199 and $80 to the debtors.[4] At

---

3. Counsel for respondents represented that only one court has discussed whether We the People USA is a bankruptcy petition preparer (though the court notes it has seen discussion, but not a final resolution, of this issue in other cases, including *In re Doser*, 281 B.R. 292, 303–304 (Bankr.D.Idaho 2002)). Presumably, the court referenced by the respondents reached a conclusion favorable to We the

People USA; however, the decision is unpublished, it is unavailable on that court's website, it is not available on Westlaw, and counsel failed to provide the court with a copy of the decision. Accordingly, the court is not privy to the reasoning applied by that court, or even to its conclusions.

4. Mr. Anderson noted in his brief that he has refunded to the Moores, the Stevens, and Ms.

the hearing, counsel represented that there are several decisions across the country finding at least $125 to be a reasonable fee, including *In re Moran,* 256 B.R. 842 (Bankr.D.N.H.2000) (holding $30 per hour, including labor and overhead expenses, to be a reasonable rate, and holding that services should be provided in five or fewer hours), and *In re Mullikin,* 231 B.R. 750 (Bankr.W.D.Mo.1999) (holding petition preparers may not charge in excess of $150, including any and all expenses). The *Moran* court surveyed case law around the country and found that courts have approved flat fees ranging from $50 to $150, with hourly rates ranging from $16.82 to $20. 256 B.R. at 849 (citing *In re Guttierez,* 248 B.R. 287, 299 (Bankr.W.D.Tex.2000) ($50); *In re Wagner,* 241 B.R. 112, 122 (Bankr.E.D.Pa.1999) ($50); *In re Burdick,* 191 B.R. 529, 537 (Bankr.N.D.N.Y.1996) ($50); *In re Cordero,* 185 B.R. 882, 886 (Bankr.M.D.Fla.1995) ($50); *Mullikin,* 231 B.R. at 753 ($150); *In re Kassa,* 198 B.R. 790, 792 (Bankr.D.Ariz. 1996) ($16.82 per hour), *aff'd,* 232 B.R. 822 (9th Cir. BAP 1999); *In re Hartman,* 208 B.R. 768, 780 (Bankr.D.Mass.1997) ($20 per hour)).

The court finds that its assessment of $80 as the reasonable value of Mr. Anderson's services is consistent with other court's rulings around the country. At the hearing on September 10, Mr. Anderson presented evidence that a typist would charge $40 per hour, and it would take her three hours to complete the documents for the three cases at issue. The court discounted this evidence because the estimate was received from a typist who does not regularly type bankruptcy documents, and the estimate is based on the use of a regular typewriter, not a computer with a software program such as most attorneys' offices use. The court further found that the fee Mr. Anderson paid to We the People USA for the typing service, $50, is also evidence of the value of the typing service itself. Mr. Anderson did not present any further evidence at the November 20 hearing to support his fee of $199.

If the court uses the reasoning of those courts that provide for an hourly rate, it is noteworthy that Mr. Anderson does not actually perform the typing service himself. He testified that when he meets with customers for the first time and establishes that they wish to file a chapter 7 petition, he has them sign a contract and pay the fee, then he hands them a packet of materials that the customers take home and review. The customers bring the completed workbook back to Mr. Anderson, he reviews it for legibility, and then he faxes the questionnaire to the typist in Nevada. When the documents are returned, he affixes "sign here" tabs, puts the documents in the proper order, and contacts the customer for review and execution. He will also file the documents with the court if requested by the customer. Without specific testimony regarding the amount of time Mr. Anderson spends on each customer, the court can only estimate that the actual work performed by Mr. Anderson simply cannot exceed two hours. Even at $20 per hour for Mr. Anderson, plus the $50 that he pays the typist, the maximum charge would be $90.

Consequently, the court finds that $80 is the reasonable value of the services provided by Mr. Anderson. Mr. Anderson's contentions that he provides services of value in addition to the preparation of the documents, including the availability of a

---

Davis their entire fees. Meanwhile, however, Mr. Anderson has continued to charge this fee to numerous debtors for whom he has prepared and filed petitions. Accordingly, the court will consider the appropriateness of the fee he charges for the services he provides.

"supervising attorney," will be addressed in the next section.

## Deceptive Practices

### Use of the "Supervising Attorney"

■ The show cause order details the use of a "supervising attorney" and the court's concerns that the referral of customers to the supervising attorney is deceptive and unfair and violates § 110. These concerns were based upon the testimony given at the hearing on September 10, 2002, as detailed in the show cause order. The respondents failed to present any further evidence at the hearing regarding the use of the supervising attorney, and they failed to specifically address such use in their post-hearing briefs other than to argue that no debtor has been harmed by the use of the existence of the supervising attorney. This argument fails to address the court's concerns that respondent's customers, while invited to "chat" with the supervising attorney, are not informed that they cannot rely on that attorney's advice, and this is likely to mislead a customer to his or her detriment. As a result, the court maintains its finding that the method of referring customers to a supervising attorney is deceptive and unfair, may subject the respondents to a criminal penalty, and violates § 110, as set forth in the show cause order. The court will certify this finding to the district court pursuant to § 110(i)(1).[5] The court further finds that injunctive relief is appropriate to prevent the recurrence of this conduct. Consequently, the court will enjoin the respondents from providing the services of a "supervising attorney" to their customers pursuant to § 110(j) and § 105(a).

### Documents Provided by We the People

■ In reviewing the documents prepared by We the People USA and provided by Mr. Anderson to his customers, the court determined in its order of September 30 that while the documents may contain legal advice, the court does not regulate publications. Rather, the court regulates the services provided by Mr. Anderson under § 110, and the court found that the documents could not be included as part of the services provided by a bankruptcy petition preparer. The court further found that the inclusion of these materials is unfair and deceptive because it gives the false impression that these documents are all that is required for the customer to decide whether to file for bankruptcy and how to complete the forms. The respondents were directed to show cause why they should not be enjoined from providing

5. Section 110(i) provides, in relevant part, that

(1) If ... a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or a creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

11 U.S.C. § 110(i). Consequently, the court's certification of its findings related to violations of § 110 and unfair or deceptive acts provides the parties the opportunity to seek damages from the district court.

these documents to customers in connection with their petition preparation services.

At the November 20 hearing, the respondents again presented no further evidence nor directly-related legal argument on the issues related to the documents other than to contend that the documents are complete and understandable, and therefore cannot be deceptive. Instead, the respondents contend that the court essentially found that anything that appeared to be "legal work" was unfair or deceptive. The respondents begin with the following:

> It is tautological that, if what a lawyer and only a lawyer is authorized to do is "law work" and a non-lawyer engages in "law work," then the non-lawyer has engaged in the unauthorized practice of law. What we don't learn from this tautology is what it is about the activity which makes it "law work" (other, of course, than it is "what lawyers do").

Resp.'s Post–Hearing Memo. at 12. Contrary to respondent's assertions, however, there is a very specific definition of "law work" provided by the North Carolina General Assembly. North Carolina General Statutes § 84–2.1 defines the practice of law as follows:

> The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person, firm or corporation, with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation: Provided, that the above reference to particular acts which are specifically included within the definition of the phrase "practice law" shall not be construed to limit the foregoing general definition of the term, but shall be construed to include the foregoing particular acts, as well as all other acts within the general definition. The phrase "practice law" does not encompass the writing of memoranda of understanding or other mediation summaries by mediators at community mediation centers authorized by G.S. 7A–38.5.

▮ Technically, all of the services provided by Mr. Anderson fall within this section, since it includes "preparing and filing of petitions for use in any court"; however, § 110 specifically provides that a non-lawyer can provide this service. As numerous courts have held, however, § 110 is very limited. *See Mullikin,* 231 B.R. at 753 ("[t]he work which a petition preparer may do is simply to type forms and file documents"); *Guttierez,* 248 B.R. at 299 (" § 110 only permits bankruptcy petition preparer[s] to 'type' dictated or handwritten documents that have been prepared prior to the debtor seeking the assistance of the scrivening/typing service"); *In re Bradshaw,* 233 B.R. 315, 323 (Bankr.D.N.J.1999) ("petition preparers may only charge a fee for typing services"); *Hartman,* 208 B.R. at 780 ("bankruptcy petition preparers may only offer typing services to debtors"); *Burdick,* 191 B.R. at 537 ("the only legitimate service performed by [the petition preparer] was the actual typing of the petitions"). This court is thus well-supported in its finding that Mr. Anderson's services must be lim-

ited to typing the documents as directed by his customers.

The court further maintains its conclusions that the provision of the documents, in combination with the petition preparation services, is unfair or deceptive and violates § 110 for the reasons set forth in the show cause order. Consequently, the court will certify this finding to the district court pursuant to § 110(i)(1). The court further finds that injunctive relief is appropriate to prevent the recurrence of this conduct. Consequently, the court will enjoin the respondents from providing these documents as part of the petition preparation services pursuant to § 110(j) and § 105(a).

### Technical Violations

As delineated in the show cause order, Mr. Anderson failed to comply with the requirements of §§ 110(b), (c) and (h), as well as Rule 9009 of the Federal Rules of Bankruptcy Procedure. Mr. Anderson admits that he failed to comply with those requirements and has agreed to accept the sanction of a warning.

Similarly, We the People USA has failed to comply with the disclosure requirements of § 110. Having found We the People USA to be a petition preparer subject to the requirements of § 110, the court will require We the People USA to comply with § 110 and any other rules applicable to bankruptcy petition preparers going forward. We the People USA has also agreed to accept the sanction of a warning, should the court determine it to be a bankruptcy petition preparer.[6]

Consequently, Charlie Anderson, We the People, and We the People USA are warned that they must comply with the

requirements of § 110 going forward, or they will be subject to a sanction of $500 for each violation.

### CONCLUSION

Based on the foregoing, We the People USA will be sanctioned with a warning for the following violations of § 110:

- failure to sign and print its name and address on the documents prepared for filing as required by § 110(b);
- failure to provide a social security number of the individual who prepared the document as required by § 110(c); and
- failure to file a declaration of fees as required by § 110(h).

Any future violation of these sections will result in a monetary sanction.

Charlie Anderson and We the People are directed to refund the difference between $199 and $80 to the debtors, Gilliam and Vanessa Moore, Neil and Nancy Stevens, and Joanne Davis. The respondents have indicated that the debtors have been refunded in full, and this directive has been satisfied in this case.

As to Charlie Anderson and We the People, a warning is hereby imposed for (1) his failure to provide the certification language required by the Official Bankruptcy Forms and Rule 9009 of the Federal Rules of Bankruptcy Procedure; (2) his failure to execute a certification of the debtors' Statement of Intention, the Statement of Financial Affairs, or the Declaration Concerning Debtor's Schedules, in violation of § 110(b); (3) his failure to provide his social security number on the documents in violation of § 110(c); and (4) his

---

**6.** While the court stated that "We the People USA has not corrected its violations of § 110, and the court intends to impose a sanction of $500 for each violation" in its show cause order, it will enter only the sanction of a warning at this time because We the People USA believed that it was not a bankruptcy petition preparer. We the People USA has now been determined to be a bankruptcy petition preparer, and it must comply with § 110.

failure to file a Statement of Compensation within 10 days of filing the petition in violation of § 110(h). Any future violation of these sections will result in a monetary sanction.

Charlie Anderson, We the People, and We the People USA are hereby enjoined from touting and offering the services of a "supervising attorney" to their customers as unfair and deceptive practices or acts that subject them to criminal penalty under § 110(j)(2)(A)(i).

Charlie Anderson, We the People, and We the People USA are hereby enjoined from providing the Customer Information Workbook, Bankruptcy Overview, Step by Step Guide to the Bankruptcy Workbook, and Tips on Filing a Chapter 7 Bankruptcy to their customers in connection with their petition preparation services as unfair and deceptive practices or acts that subject them to criminal penalty under § 110(j)(2)(A)(i).

The violations of 11 U.S.C. § 110 and those acts found to be unfair or deceptive are **HEREBY CERTIFIED** to the United States District Court for the Eastern District of North Carolina pursuant to 11 U.S.C. § 110(i)(1).

**SO ORDERED**.