**In re Michael M. DOUGLAS and Melinda R. Douglas, Debtors.**

**W. Clarkson McDow, Jr. U.S. Trustee for Region 4, Plaintiff,**

v.

**We the People Forms and Service Centers, Inc., et al., Defendants.**

**Bankruptcy No. 02–58492–JS.**
**Adversary No. 02–5899–JS.**

United States Bankruptcy Court, D. Maryland.

Sept. 23, 2003.

---

James V. McFaul, Esquire, Law Offices of James V. McFaul, P.A., Towson, MD, for debtors.

Mark A. Neal, Esquire, Katherine A. Levin, Esquire, Sandra Manocchio, Esquire, Office of the U.S. Trustee, Baltimore, MD, Assistant U.S. Trustee.

### MEMORANDUM OPINION DENYING MOTION TO DISMISS

JAMES F. SCHNEIDER, Chief Judge.

This matter came on for hearing before this Court upon the defendants' motion to dismiss complaint [P. 3], pursuant to Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012. For the reasons stated, the motion to dismiss will be denied.

### FINDINGS OF FACT

On May 28,2002, the debtors, Michael and Melinda Douglas, filed the instant bankruptcy case as a Chapter 7 proceeding in this Court. In connection with the filing, they employed the services of the defendant petition-preparer, We the People.

On July 1, 2003, a motion for relief from the automatic stay [P. 3] was filed by Homeside Lending, Inc., as to the debtors' residence at 2 Westdale Road, Glen Burnie, Maryland 21061. After a hearing, the motion for relief from the automatic stay was granted against the *pro se* debtors for cause pursuant to Section 362(d)(1) of the Bankruptcy Code by order [P. 14].

On July 8, 2002, the *pro se* debtors entered into a reaffirmation agreement [P. 8] with Beneficial Maryland, Inc., another of the debtors' lienholders.

On July 31, 2003, after the stay had been lifted and the reaffirmation agreement had been entered, the debtors engaged the legal services of Antonio Aquia, Esquire, as counsel to represent them in this case. The following day, August 1, 2002, Mr. Aquia filed a motion on their behalf [P. 18] to convert the case to Chapter 13. This was accomplished by order [P. 19] entered on August 5, 2002.

On August 2, 2002, Mr. Aquia filed another motion on the debtors' behalf [P. 21] for reconsideration of the order lifting the automatic stay. On September 16, 2003, this Court held a hearing on the motion and the response [P. 22] by Homeside Lending, Inc. and granted the motion, reinstating the automatic stay by order [P. 36]. On November 13, 2002, a consent order [P. 41] was entered on the motion for relief from stay that allowed the debtors to keep their property and to continue making payments to Homeside.

On August 22, 2002, the Court disapproved the reaffirmation agreement that the debtors had entered into with Beneficial, Inc. The following day, counsel for the debtors filed a motion [P. 29] to avoid the lien of Beneficial Maryland, Inc., which this Court granted by order [P. 53] entered on January 31, 2003.

Upon the conversion of the case to Chapter 13, the debtors filed a plan of reorganization [P. 20] which was confirmed by order [P. 44] entered on December 10, 2002.

## THE INSTANT COMPLAINT

On November 21, 2002, W. Clarkson McDow, Jr., the United States Trustee for Region 4, filed the instant complaint against We the People Forms and Service Centers USA, We the People Mid–Atlantic, Inc., Arlita Albritton, Jason E. Searns and James V. McFaul, to "Enjoin the Defendants from Engaging in Conduct in Violation of 11 U.S.C. § 110[1] and for Related

1. Section 110 provides, as follows:
Section 110. Penalty for persons who negligently or fraudulently prepare bankruptcy petitions.
(a) In this section-
(1) "bankruptcy petition preparer" means a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing; and
(2) "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title.
(b)(1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address.
(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.
(c)(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.
(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.
(3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.
(d)(1) A bankruptcy petition preparer shall, not later than the time at which a document for filing is presented for the debtor's signature, furnish to the debtor a copy of the document.
(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.
(e)(1) A bankruptcy petition preparer shall not execute any document on behalf of a debtor.
(2) A bankruptcy petition preparer may be fined not more than $500 for each document executed in violation of paragraph (1).
(f)(1) A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.
(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).
(g)(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.
(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).
(h)(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.
(2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).
(3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2).

Relief."[2]  On December 4, 2002, the defen-   dants filed the instant motion to dismiss

(4) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

(i)(1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, including papers specified in section 521(1) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor-

(A) the debtor's actual damages;

(B) the greater of-

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000 plus reasonable attorneys' fees and costs incurred.

(j)(1) A debtor for whom a bankruptcy petition preparer has prepared a document for filing, the trustee, a creditor, or the United States trustee in the district in which the bankruptcy petition preparer resides, has conducted business, or the United States trustee in any other district in which the debtor resides may bring a civil action to enjoin a bankruptcy petition preparer from engaging in any conduct in violation of this section or from further acting as a bankruptcy petition preparer.

(2)(A) In an action under paragraph (1), if the court finds that-

(i) a bankruptcy petition preparer has-

(I) engaged in conduct in violation of this section or of any provision of this title a violation of which subjects a person to criminal penalty;

(II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or

(III) engaged in any other fraudulent, unfair, or deceptive conduct; and

(ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

(B) If the court finds that a bankruptcy petition preparer has continually engaged in conduct described in subclause (I), (II), or (III) of clause (i) and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title, or has not paid a penalty imposed under this section, the court may enjoin the person from acting as a bankruptcy petition preparer.

(3) The court shall award to a debtor, trustee, or creditor that brings a successful action under this subsection reasonable attorney's fees and costs of the action, to be paid by the bankruptcy petition preparer.

(k) Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

11 U.S.C. § 110.

**2.** The four-count complaint sets forth the following factual allegations:

The plaintiff, W. Clarkson McDow, Jr., is the United States Trustee for Region Four, which includes the District of Maryland and is duly appointed under 28 U.S.C. § 581(a)(4). Defendant We The People Forms and Service Centers USA, Inc. ("WTPUSA"), is a corporation organized under the laws of the State of California. Defendant We The People Mid–Atlantic ("WTPMA") is a corporation organized under the laws of the State of Delaware (WTPMA and WTPUSA are collectively referred to herein as "WTP"). WTPMA has five offices in the State of Maryland. Defendants Arlita Albritton and James V. McFaul are individuals residing in the State of Maryland. Defendant Jason E. Searns is an individual residing in the State of Colorado.

WTP advertises its bankruptcy services in the Yellow Pages, on television, and by direct mail. The advertisements create the

impression that WTP is qualified and will provide legal advice. WTP designs the advertisements in this manner to induce potential customers to believe that WTP is qualified to and will provide legal advice. Through its advertisements, WTP systematically solicits customers with the intent and purpose of providing legal advice and counseling in connection with the preparation and filing of bankruptcy documents with this Court. WTPUSA appoints a supervising attorney ("the Supervising Attorney") for each of its franchise offices. WTPMA is required by WTPUSA to direct their customers' legal questions to the Supervising Attorney. The Supervising Attorney is required by WTP to be available for consultation on legal issues presented by customers of WTP. While simultaneously advertising and advising customers that an attorney is available to answer customers' legal questions, WTPUSA directs the Supervising Attorneys to refer a customer to another lawyer if a customer asks a question more complicated than a non-lawyer might be able to address.

During the period prior to their first contact with WTP, Michael and Melinda Douglas ("the Douglases") were facing financial difficulties. In December 2001, Mr. Douglas, the sole obligor on the mortgage encumbering the Douglases' residence, entered into a forbearance agreement with the mortgage company ("the Mortgage Company"). After viewing a WTP advertisement, the Douglases contacted the local WTPMA office located at 7565 Ritchie Highway, Glen Burnie, Maryland 21061 ("the Local Office") for assistance with their financial difficulties. At that time, Ms. Douglas spoke with WTPMA employee Arlita Albritton. When asked, Ms. Albritton advised that WTP could assist the Douglases with their financial difficulties. Ms. Albritton proceeded to question Ms. Douglas about the Douglases' financial affairs. After Ms. Douglas answered Ms. Albritton's questions regarding the Douglases' financial affairs, Ms. Albritton advised the Douglases to file for Chapter 7 bankruptcy protection. Ms. Albritton assured Ms. Douglas that filing bankruptcy would not result in the loss of the Douglases' residence. Ms. Albritton directed Ms. Douglas to gather and bring to the Local office documentation, including but not limited to all correspondence received from the Mortgage Company about the residence, all papers received from any court, current billing statements, pay stubs

and several years of tax returns. At their initial meeting in about May 2002, Ms. Albritton again recommended that the Douglases file for Chapter 7 protection. At their initial meeting, Ms. Albritton also represented to Ms. Douglas that WTP maintains a 96% success rate and, in addition, has procured favorable workout agreements between mortgage companies and homeowners, even in situations where a forbearance agreement was already in place. In reliance upon those representations, the Douglases agreed to utilize WTP's services to file and pursue a Chapter 7 bankruptcy and paid the standard $214.00 WTP fee.

Ms. Albritton then provided Ms. Douglas with the WTPUSA information packet (the "WTPUSA Packet") and instructed the Douglases to review its contents and complete the enclosed WTPUSA Customer Information Workbook (the "WTPUSA Workbook"). The Douglases filled out as much of the WTPUSA Workbook as they were able, however, they left all questions relating to exemptions blank and did not answer several questions related to their personal property. Ms. Douglas then returned to the Local Office for a follow-up meeting.

At the Local Office, Ms. Albritton insisted on completing the WTPUSA Workbook and corrected several "mistakes" made by the Douglases, including adjusting the Douglases' monthly food expenditures and Mr. Douglas' income, filling in the list of exemptions and generally advising which forms were required and how they should be completed. The Douglases again expressed to Ms. Albritton their concern about filing Chapter 7 because certain information contained in the WTPUSA Packet suggested that Chapter 7 might not be beneficial to an individual behind on mortgage payments. Ms. Albritton again advised the Douglases that a Chapter 7 bankruptcy was the right solution for them and further advised that, if they didn't believe her, the Douglases could contact the WTPMA Supervising Attorney. Trusting Ms. Albritton, Ms. Douglas left the Local Office without speaking to the Supervising Attorney.

In accordance with the standard procedure adopted by WTPUSA for its franchise offices, Ms. Albritton forwarded the WTPUSA Workbook to the appropriate WTPUSA location. WTPUSA generated a Chapter 7 voluntary petition, Statement of Financial Affairs and Schedules of Assets and Liabilities and Statement of Intention (collective-

ly, the "Bankruptcy Documents"), all of which were returned to the Local office for execution. Ms. Douglas returned to the Local office, where she signed the Bankruptcy Documents and delivered an additional $200.00 for the Chapter 7 filing fee. On May 28, 2002, WTP filed the Douglases' Bankruptcy Documents with the United States Bankruptcy Court for the District of Maryland, Baltimore Division (the "Court"). Among the bankruptcy petition preparers associated with the Douglases' bankruptcy case, only Ms. Albritton signed the Bankruptcy Documents and provided her social security number in accordance with 11 U.S.C. § 110(b) and (c).

WTP filed with the Court a declaration disclosing the WTPUSA Workbook $214.00 fee received from the Douglases. The fee WTP received from the Douglases exceeds the value of the services rendered for the preparation of the Bankruptcy Documents.

At the meeting of creditors, the Douglases appeared *pro se* and were questioned by a creditor regarding their income and expenditures. After the meeting, the Douglases repeatedly telephoned the Local Office seeking assistance regarding the creditor inquiry. Neither Ms. Albritton nor anyone from WTP responded to the numerous messages left by the Douglases.

Shortly after the filing of the Bankruptcy Documents, the Douglases received a motion for relief from stay (the "Motion") filed by the Mortgage Company with respect to the Douglases' residence and notice of hearing thereon (the "Notice"). Upon receiving the Motion and Notice, the Douglases were again concerned that they might lose their home and repeatedly telephoned the Local office seeking WTP's assistance again, this time regarding how to proceed in response to the Motion. Neither Ms. Albritton or anyone from WTP responded to the numerous messages left by the Douglases.

The Douglases attempted to defend against the Motion without the assistance of counsel. After conducting a hearing at which the debtors again appeared *pro se*, the Court granted relief from stay to the Mortgage Company, stating that in a Chapter 7 proceeding, there were no grounds upon which the Court could deny the Motion.

Immediately after the hearing, the Douglases sought and obtained the assistance of an attorney licensed to practice law in the State of Maryland and before this Court.

New counsel filed a notice of conversion of the Douglases' case to Chapter 13 and a motion to strike the order granting the Mortgage Company relief from stay. The motion to strike was granted and the case was converted to Chapter 13. Through the Chapter 13 process, the Douglases are now making payments to their creditors and the Mortgage Company and were able to avert the imminent foreclosure of their home.

At all times relevant to the matters complained of herein, WTPUSA, WTPMA and Arlita Albritton (collectively referred to as the "BPPs") were all bankruptcy petition preparers as defined by 11 U.S.C. § 110(a)(1). At all times relevant to the matters complained of herein, the BPPs were not licensed to practice law in the State of Maryland or before this Court. At all times relevant to the matters complained of herein, the BPPS were not employed by an attorney licensed to practice law in the State of Maryland or before this Court.

## COUNT I

### 11 U.S.C. § 110(j)—Injunction

### We The People Forms and Service center USA, Inc.

### We The People Mid–Atlantic, Inc. and Arlita Albritton

WTPMA is a franchised operation of WTPUSA. WTPMA operates under the control of and pursuant to manuals and guidelines established by WTPUSA. In accordance with the standard procedure adopted by WTPUSA for its franchise offices, WTPUSA produces all the legal documents and forms used by WTPMA, for which WTPMA pays a processing fee to WTPUSA. The franchise offices, including WTPMA, are prohibited from generating their own legal documents. WTPUSA ensures compliance with its rules and guidelines by, among other methods, entering and inspecting its franchise offices and observing the manner in which they provide services to WTP customers. WTPUSA controls, audits and monitors the operations of its franchise offices, including the WTPMA offices, through a variety of methods, including without limitation training, advertising and promotional activities, the appointment of a Supervising Attorney for the franchise offices, the use of the "We The People" name, logo and related trademarks, and the selection of office locations and standardized office layout.

At all times relevant to the matters complained of herein, Ms. Albritton was an em-

ployee of WTPMA and a manger of the Local Office. For the purpose of providing assistance to WTP customers, upon information and belief, Ms. Albritton received training from WTPUSA and received the operating manuals and guidelines provided by WTPUSA to each of its franchise offices. While operating within the scope her employment by and as an agent for WTPMA and WTPUSA, Ms. Albritton provided the Douglases with legal advice in connection with the preparation and filing of the Douglases' Chapter 7 Bankruptcy Documents. As Ms. Albritton's employers and supervisors, WTPMA and WTPUSA are responsible for Ms. Albritton's actions performed within the scope of her employment. By providing legal advice to the Douglases, the BPPs engaged in the unauthorized practice of law in violation of Md. Ann.Code Bus. Occ. & Prof. § 10–601. By engaging in the unauthorized practice of law, the BPPs engaged in fraudulent, unfair, or deceptive conduct in violation of 11 U.S.C. § 110(j)(1) and (2). The BPPs have continually engaged in conduct in violation of 11 U.S.C. § 110(j)(2)(A)(i).

WTP, through its employees and agents, has engaged and regularly engages in conduct similar to that described herein when preparing bankruptcy documents for filing for other *pro se* debtors in this Court, including providing legal advice and services in their filing of their bankruptcy documents.

By advertising and advising its customers, including the Douglases, that an attorney is available to consult with them regarding legal issues, WTP unfairly and deceptively creates the impression that their customers will receive legal advice. WTP systematically solicits customers with the intent and purpose of providing legal advice and counseling in connection with the preparation and filing of bankruptcy documents with this Court. Through its systematic solicitation of and advertising to customers, WTP engages in fraudulent, unfair or deceptive conduct in violation of 11 U.S.C. § 110(j)(2)(A)(i). [Wherefore the complaint seeks an injunction against the BPPs from further violations of 11 U.S.C. § 110, from continuing to act as bankruptcy petition preparers, or in the alternative, limiting the services that the BPPs provide to typing and forms preparation and setting a maximum amount that can be charged.]

**COUNT II**

**11 U.S.C. § 105**

**Jason E. Searns and James V. McFaul**

At all times relevant to the matters complained of herein, James V. McFaul was an attorney employed by WTP as the Supervising Attorney for WTPMA. At all times relevant to the matters complained of herein, Jason E. Searns was the general counsel for WTPUSA.

WTP advertises and advises its customers that an attorney is available to consult with them regarding legal issues. As the Supervising Attorney for WTPMA, Mr. McFaul is required by WTP to be available for consultation on legal issues presented by customers of WTP. Through its systematic solicitation of and advertising to customers, WTP engages in fraudulent, unfair or deceptive conduct in violation of 11 U.S.C. § 110(j)(2)(A)(i). By serving as the Supervising Attorney for WTPMA, Mr. McFaul furthers and enables WTP's unfair and deceptive practice in violation of 11 U.S.C. § 110(j)(2)(A)(i). As an attorney for WTPMA, Mr. McFaul assisted the BPPs in the performance of activities that constitute the unauthorized practice of law in violation of Md. Ann.Code Bus. Occ. & Prof. § 10–601. Mr. McFaul has acted in violation of Md. Rule of Prof. Conduct 5.5 by assisting the BPPs, who are not members of the bar, in the performance of activities that constitute the unauthorized practice of law.

As an attorney for WTPUSA, Mr. Searns assisted and directed the BPPs in the performance of activities that constitute the unauthorized practice of law and violate Md. Ann.Code Bus. Occ. & Prof. § 10–601. Mr. Searns has acted in violation of Md. Rule of Prof. Conduct 5.5 and Colorado Rule of Prof. Conduct 5.5 by assisting the BPPs, who are not members of the bar, in the performance of activities that constitute the unauthorized practice of law. [Wherefore the complaint seeks an injunction against each defendant.]

**COUNT III**

**11 U.S.C. § 110(b)**

**We The People Forms and Service Center USA, Inc. and We The People Mid–Atlantic, Inc.**

Pursuant to 11 U.S.C. § 110(b)(1), WTPUSA and WTPMA were required to sign the Douglases' Bankruptcy Documents for filing and print on the Bankruptcy Documents their names and addresses. In violation of 11 U.S.C. § 110(b)(1), WTPUSA and WTPMA failed to sign and print their names and addresses on the Douglases'

[P. 3].

The motion to dismiss sets forth numerous grounds for dismissal, namely this Court's lack of subject matter jurisdiction to hear the instant complaint, including the absence of the requirement that a "case or controversy" exist giving rise to Federal jurisdiction; the unconstitutionality of 11 U.S.C. § 110; the vagueness and overbreadth of the statute; and its infringement of the defendants' First Amendment rights.

## CONCLUSIONS OF LAW

### SUBJECT MATTER JURISDICTION

██ This court has jurisdiction over the instant adversary proceeding which is a contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O).

By enacting Section 110 of the Bankruptcy Code, Congress unequivocally conferred upon the bankruptcy courts the power to enforce the strictures of the statute. Such power is well within the scope of the core jurisdiction of bankruptcy courts to hear and determine matters central to the administration of debtors' estates in bankruptcy, granted by Congress in Section 157 of 28 U.S.C., the Judicial Code.[3]

Bankruptcy Documents. [Wherefore the complaint seeks a fine against WTPUSA and WTPMA in the amount of $500 each.]

COUNT IV

11 U.S.C. § 110(h)(2)—Disgorgement

We The People Forms and Service center USA, Inc., and We The People Mid-Atlantic, Inc.

The fee received from the Douglases exceeds the value of the services rendered for the preparation of the Bankruptcy Documents. [Wherefore the complaint seeks the disallowance and return to the debtors of any fee charged in excess of the value of the services rendered by the defendants.]

*Complaint.*

3. Section 157 of 28 U.S.C. provides as follows:

§ 157. Procedures

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

■ The instant complaint is certainly a "matter concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). There can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases. When a complaint of misconduct is brought in the bankruptcy court against such a professional by the Office of the United States Trustee, which is statutorily charged with monitoring the bankruptcy system for the public good, it is obvious that this Court has the subject matter jurisdiction to hear and determine it. Any assertion to the contrary is nonsense.

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.
>
> (3) The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.
>
> (4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).
>
> (5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.
>
> (c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district

## OTHER GROUNDS RAISED BY THE MOTION TO DISMISS

■ As stated by this Court in the case of *Hemelt v. Pontier (In re Pontier)*, 165 B.R. 797 (Bankr.D.Md.1994):

> When ruling upon a motion to dismiss a complaint for failure to state a claim for which relief can be granted pursuant to Federal Rule 12(b)(6), the Court must accept as true all well-pleaded allegations in the complaint, including all reasonable inferences that may be drawn from them, in the light most favorable to the plaintiff. A motion to dismiss for failure to state a claim should only be granted where it appears to be impossible for the plaintiff to allege any facts sufficient for relief to be granted. *Cald-*

> court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
>
> (2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.
>
> (d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.
>
> (e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

28 U.S.C. § 157.

*well v. City of Elwood,* 959 F.2d 670 (7th Cir.1992); *Schrob v. Catterson,* 948 F.2d 1402 (3d Cir.1991); *Bane v. Ferguson,* 890 F.2d 11 (7th Cir.1989); *In re Collins,* 137 B.R. 754, 757 (Bankr.E.D.Ark. 1992), *citing Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). According to this standard, the motion to dismiss will be denied.

*In re Pontier,* 165 B.R. at 798–99. In the instant case, the motion to dismiss will be denied because, accepting as true all of the well-pleaded facts in the complaint and all of the inferences that may reasonably be drawn from them in a light most favorable to the plaintiff, the Court finds that the complaint states sufficient facts for which relief can be granted, based upon the following analysis.

### CASE OR CONTROVERSY

■ "The jurisdiction of federal courts is defined and limited by Article III of the Constitution. In terms relevant to the question for decision in this case, the judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'" *Flast v. Cohen,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968); U.S. Const. Art. III, sec. 2. As the Court stated in the case of *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937):

A "controversy" ... must be one that is appropriate for judicial determination. *Osborn v. Bank of United States,* 9 Wheat. 738, 819, 6 L.Ed. 204 [(1824)]. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *United States v. Alaska S.S. Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 [(1920)]. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *South Spring Gold Co. v. Amador Gold Co.,* 145 U.S. 300, 301, 12 S.Ct. 921, 36 L.Ed. 712 [(1892)]; *Fairchild v. Hughes,* 258 U.S. 126, 129, 42 S.Ct. 274, 275, 66 L.Ed. 499 [(1922)]; *Massachusetts v. Mellon,* 262 U.S. 447, 487, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 [(1923)]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *See Muskrat v. United States,* [219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911)]; *Texas v. Interstate Commerce Commission,* 258 U.S. 158, 162, 42 S.Ct. 261, 262, 66 L.Ed. 531 [(1922)]; *New Jersey v. Sargent,* 269 U.S. 328, 339, 340, 46 S.Ct. 122, 125, 70 L.Ed. 289 [(1926)]; *Liberty Warehouse Co. v. Grannis,* 273 U.S. 70, 47 S.Ct. 282, 71 L.Ed. 541 [(1927)]; *New York v. Illinois,* 274 U.S. 488, 490, 47 S.Ct. 661, 71 L.Ed. 1164 [(1927)]; *Willing v. Chicago Auditorium Association,* 277 U.S. 274, 289, 290, 48 S.Ct. 507, 509, 72 L.Ed. 880 [(1928)]; *Arizona v. California,* 283 U.S. 423, 463, 464, 51 S.Ct. 522, 529, 75 L.Ed. 1154 [(1931)]; *Alabama v. Arizona,* 291 U.S. 286, 291, 54 S.Ct. 399, 401, 78 L.Ed. 798 [(1934)]; *United States v. West Virginia,* 295 U.S. 463, 474, 475, 55 S.Ct. 789, 793, 79 L.Ed. 1546 [(1935)]; *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 324, 56 S.Ct. 466, 472, 80 L.Ed. 688 [(1936)]. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. *Nashville, Chatta-*

*nooga & St. Louis R. Co. v. Wallace,* 288 U.S. 249, 263, 53 S.Ct. 345, 348, 77 L.Ed. 730, 87 A.L.R. 1191 [(1933)]; *Tutun v. United States,* 270 U.S. 568, 576, 577, 46 S.Ct. 425, 426, 70 L.Ed. 738 [(1926)]; *Fidelity National Bank & Trust Co. v. Swope,* 274 U.S. 123, 132, 47 S.Ct. 511, 514, 71 L.Ed. 959 [(1923)]; *Old Colony Trust Company v. Commissioner,* 279 U.S. 716, 725, 49 S.Ct. 499, 502, 73 L.Ed. 918 [(1929)]. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. *Nashville, Chattanooga & St. Louis R. Co. v. Wallace, supra,* 288 U.S. at 264, 53 S.Ct. at 348, 77 L.Ed. 730, 87 A.L.R. 1191.

*Id.*

All of the elements of a case or controversy are present here. The U.S. Trustee's claims for injunctive relief are founded upon deceptive misconduct alleged to have been committed by the defendants that caused actual injury to the Douglases and other unnamed debtors. While the instant cause of action was precipitated by the injury caused to the debtors by the faulty legal advice given them by the petition preparer, the essence of the instant complaint is the allegation that the defendants misrepresented their qualifications to render such advice, and in so doing, victimized the debtors by practicing law without a license. *Cf. In re Moore,* 283 B.R. 852, 860–61 (Bankr.E.D.N.C.2002). The complaint seeks damages for past injury, but also injunctive relief to prevent the defendants from committing deceptive practices in the future. The defendants dispute not only the allegations contained in the complaint, but the right of the plaintiff to bring the action and even the constitutionality of the statute under which the complaint was brought. Under these circumstances, it is clear to this Court that is has before such a "clash of adverse parties" as to create a case or controversy sufficient to confer Federal jurisdiction. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974), *quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ The U.S. Trustee is clothed by law with the duty of policing the bankruptcy system to prevent the types of abuses alleged to have been committed by the defendants.[4] "In essence the question of

---

[4] The duties of the United States Trustee are set forth in 28 U.S.C. § 586 which provides, as follows:

§ 586. Duties; supervision by Attorney General

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall-

(1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;

(2) serve as and perform the duties of a trustee in a case under title 11 when required under title 11 to serve as trustee in such a case;

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate-

(A)(i) reviewing, in accordance with procedural guidelines adopted by the Executive Office of the United States Trustee (which guidelines shall be applied uniformly by the United States trustee except when circumstances warrant different treatment), applications filed for compensation and reimbursement under section 330 of title 11; and

(ii) filing with the court comments with respect to such application and, if the United States Trustee considers it to be appropriate, objections to such application.

(B) monitoring plans and disclosure statements filed in cases under chapter 11 of title 11 and filing with the court, in connection with hearings under sections 1125 and 1128 of such title, comments with

respect to such plans and disclosure statements;

(C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans;

(D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;

(E) monitoring creditors' committees appointed under title 11;

(F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney in carrying out prosecutions based on such action;

(G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress; and

(H) monitoring applications filed under section 327 of title 11 and, whenever the United States trustee deems it to be appropriate, filing with the court comments with respect to the approval of such applications;

(4) deposit or invest under section 345 of title 11 money received as trustee in cases under title 11;

(5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe; and

(6) make such reports as the Attorney General directs.

(b) If the number of cases under chapter 12 or 13 of title 11 commenced in a particular region so warrants, the United States trustee for such region may, subject to the approval of the Attorney General, appoint one or more individuals to serve as standing trustee, or designate one or more assistant United States trustees to serve in cases under such chapter. The United States trustee for such region shall supervise any such individual appointed as standing trustee in the performance of the duties of standing trustee.

(c) Each United States trustee shall be under the general supervision of the Attorney General, who shall provide general coordination and assistance to the United States trustees.

(d) The Attorney General shall prescribe by rule qualifications for membership on the panels established by United States trustees under paragraph (a)(1) of this section, and qualifications for appointment under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11. The Attorney General may not require that an individual be an attorney in order to qualify for appointment under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11.

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix-

(A) a maximum annual compensation for such individual consisting of-

(i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and

(ii) the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and

(B) a percentage fee not to exceed-

(i) in the case of a debtor who is not a family farmer, ten percent; or

(ii) in the case of a debtor who is a family farmer, the sum of-

(I) not to exceed ten percent of the payments made under the plan of such debtor, with respect to payments in an aggregate amount not to exceed $450,000; and

(II) three percent of payments made under the plan of such debtor, with respect to payments made after the aggregate amount of payments made under the plan exceeds $450,000;

based on such maximum annual compensation and the actual, necessary expenses incurred by such individual as standing trustee.

(2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which

standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. In both dimensions it is founded in concern about the proper—and properly limited role of the court in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975), *quoted in Palmer v. City of Chicago,* 755 F.2d 560, 570 (7th Cir.1985). The plaintiff has demonstrated that he and the defendants are proper adversaries to a concrete controversy.

## CONSTITUTIONALITY OF 11 U.S.C. § 110

■ The statutory purpose behind the enactment of Section 110, as revealed in its legislative history, was to address a problem perceived by Congress to be detrimental to the proper administration of the bankruptcy system, namely the lack of standards for and the unregulated practices of bankruptcy petition preparers.[5] This is a proper exercise of the bankruptcy power conferred upon Congress by the

---

such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States Trustee System Fund-

(A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and

(B) any amount by which the percentage for all such cases exceeds-

(i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus

(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section.

*Id.*

5. The legislative history to Section 110 provides, as follows:

This section adds a new section to chapter 1 of title 1 of title 11 United States Code to create standards and penalties pertaining to bankruptcy petition preparers. Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system. This section requires all bankruptcy petition services to provide their relevant personal identifying information on the bankruptcy filing. It requires copies of all bankruptcy documents to be given to the debtor and signed by the debtor. The section also provides that if the petition is dismissed as the result of fraud or incompetence on the preparer's account, or if the preparer commits an inappropriate or deceptive act, the debtor is entitled to receive actual damages, plus statutory damages of $2,000 or twice the amount paid to the preparer, whichever is greater, plus reasonable attorney's fees and costs of seeking such relief. The bankruptcy preparer is also subject to injunctive action preventing the preparer from further work in the bankruptcy preparation business.

140 Cong. Rec. H 10,770 (October 4, 1994). The legislative history of Section 110 is quoted here, not for the purpose of statutory interpretation, because the plain meaning of the statute is clear. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Rather, an exposition of congressional intent is useful to an understanding of the issues that provided the motivation for Congress to enact the statute in its present form and content.

U.S. Constitution in Article I, Section 8, clause 4, to establish uniform bankruptcy laws. There is no doubt that Congress has the same constitutional authority to protect the rights of *pro se* debtors in the regulation of bankruptcy petition preparers pursuant to Section 110, as it has in

the supervision and regulation of attorneys for the protection of their clients.[6]

Indeed, the problems and the potential for abuse are even greater when petition preparers act in place of attorneys as gatekeepers to the bankruptcy court.[7]

6. At oral argument, Mr. Vihon, counsel to the defendants, challenged as inapposite to the facts of the instant proceeding the cases cited by the U.S. Trustee that involved the power of bankruptcy courts to discipline attorneys, as opposed to petition preparers, because attorneys practice before the courts while bankruptcy petition preparers do not. As counsel forcefully argued:

> ... A bankruptcy petition preparer doesn't even appear in the courtroom. Consequently, the paradigm for the regulation of attorneys' conduct is really inapposite with respect to the conduct of a bankruptcy petition preparer. And that's a very, very important distinction, Your Honor, because it's clear that the Court has the authority to deal with the conduct of lawyers who practice before it. And but for the statute, Section 329, for example, of Title 11 with regard to the prepetition fees of a lawyer, the Court would not probably be able to reach back. But it's because of the practicing of the attorney before the court, the fact that the attorney is an officer of the court, the fact that the attorney is governed by rules of conduct and professional ethics, all of which are part of the judicial system. It's a very different model from that of bankruptcy petition preparers and what Congress has attempted to do here. And so I would suggest to Your Honor that those cases are really inapposite and cannot support the regulation of a bankruptcy petition preparer on the basis of practicing, as it were, before the Court.

Argument of Charles F. Vihon, Esquire, T. 5–6.

Nevertheless, this Court finds precedential value in the cases cited by the plaintiff for the proposition by analogy that bankruptcy courts possess overarching power to regulate the conduct of professionals employed by debtors to assist them in the preparation and filing of bankruptcy petitions, whether or not these petition preparers ever appear at court. It is precisely because petition preparers do not come to court and often perform their services anonymously that the statute was enact-

ed to bring them out of the shadows and into the full view and vicarious presence of the Court.

7. In the recent case of *Tighe v. Alba (In re Shoup)*, 290 B.R. 768 (Bankr.C.D.Cal.2003), the court stated:

> Section 110(g)(1) was enacted for three reasons: (1) to prevent the unauthorized filing of petitions; (2) to prevent or curtail the preparer's influence on a debtor's decision and timing on petition filing; and (3) to prevent a preparer's misrepresentation, or misquoting of the filing fee.... Courts adopting the majority view opine that Congress prohibited bankruptcy petition preparers from even coming into possession of the filing fee to keep preparers from controlling the timing of bankruptcy since the time of filing can affect debtors' rights. The court in *[In re] Green*, [197 B.R. 878 (Bankr.D.Ariz.1996)], construing section 110(g)(1)'s proscription broadly in light of the statute's regulatory purpose, discussed the potential harm to consumers posed by preparers handling filing fees, particularly in the absence of ethical guidelines, competency requirements, licensing procedures for preparers and adequate remedies for their improper conduct, stating:
>
>> Because a nonlawyer document preparer cannot give his/her clients adequate assurance that his/her interests will be protected through the course of a bankruptcy proceeding, society, speaking through Congress, has imposed limitations on the ability of nonlawyer petition preparers to act on behalf of debtors. The clear message of § 110 is that nonlawyer petition preparers may not give advice or otherwise make decisions on behalf of the debtor. The petition preparer is also prohibited from interacting with the court on behalf of the debtor.
>
> When viewed from this perspective, the issue at hand is not whether People's Law received a "payment," defined in the most narrow sense. The issue is whether Peo-

The defendants argue that petition preparers contribute absolutely nothing to the substance of the bankruptcy petitions and schedules they prepare to be filed. They say that the preparer is a scrivener who copies into the documents the information furnished by the debtor. Therefore, the argument proceeds, the petition preparer has as much connection with the documents and as much of an impact on the administration of the bankruptcy system as a courier who delivers the documents to the clerk's office.

This argument not only invites this Court to second-guess the findings of Congress contained in the legislative history of Section 110, it is also flawed because in the context of a motion to dismiss, it disputes the well-pleaded facts in the complaint, which alleged that the defendants did much more than merely prepare the bankruptcy documents in this case. The allegations in the complaint are sufficient to subject the defendants to the jurisdiction of this Court and blunts the foregoing argument for purposes of the motion to dismiss.

The constitutionality and enforceability of Section 110 have been upheld by every court that has been called upon to decide the issue. *See Ferm v. U.S. Trustee (In re Crawford)*, 194 F.3d 954, (9th Cir.1999), *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000) (statute requiring petition preparers to include their social security numbers on all documents filed with bankruptcy court did not violate preparer's right to equal protection); *Scott v.*

*U.S. Trustee (In re Doser)*, 292 B.R. 652 (D.Idaho 2003) (statute did not unconstitutionally restrict petition preparer's First Amendment rights); *Ferm v. U.S. Trustee (In re Crowe)*, 243 B.R. 43 (9th Cir. BAP 2000), *aff'd*, 246 F.3d 673 (9th Cir.2000) (injunction issued against bankruptcy petition preparer was not violative of his right to freedom of speech); *In re Kaitangian*, 218 B.R. 102 (Bankr.S.D.Cal.1998) (statute regulating the conduct of petition preparers did not unconstitutionally deny one the right to pursue one's chosen calling because the right to pursue a calling as bankruptcy petition preparer was not a "fundamental right" for equal protection purposes); *Jeter v. U.S. Trustee (In re Adams)*, 214 B.R. 212 (9th Cir. BAP 1997) (statute requiring bankruptcy petition preparer to place her social security number on court documents did not violate her constitutional right to privacy); *Ferm v. U.S. Trustee (In re Rausch)*, 213 B.R. 364 (D.Nev.1997), *aff'd*, 194 F.3d 954, *cert. denied*, 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000) (statute requiring disclosure of petition preparer's social security number on documents filed with court was rationally related to government interest in consumer protection and, thus, did not violate preparer's right to equal protection). Most significantly, the constitutionality of the statute has also been upheld in the Fourth Circuit in the case of *In re Moore*, 283 B.R. 852 (Bankr.E.D.N.C. 2002), in which Chief Judge A. Thomas Small wrote:

ple's Law controlled the timing of the bankruptcy filing. Given that People's Law took possession of the filing fee and controlled the ultimate filing of the petition, this court must conclude that People's Law violated § 110(g).

In so concluding, this court considers the potential for harm. If the procedure employed by People's Law was used by an

unscrupulous and/or incompetent petition preparer, it could result in harm to debtors. Indeed, the timing of the petition can sometimes determine whether a debtor will lose his/her home or other property to foreclosure.

*Shoup*, 290 B.R. at 775, *quoting United States Trustee v. PLA People's Law–Arizona, Inc. (In re Green)*, 197 B.R. at 880.

The petition has everything to do with the administration of a bankruptcy estate. The petition is essential to the proper operation of the bankruptcy process, and all parties suffer if a petition is improperly prepared. Congress clearly has the authority to regulate the preparation of the petition. Similarly, because the petition and schedules are at the heart of the bankruptcy process, matters attendant to its preparation are "core" proceedings. Section 110 contains limitations on what a bankruptcy court may do to enforce its provisions, and in appropriate circumstances the bankruptcy court may certify issues to the district court.

283 B.R. at 857.

■ The defendants argue that the statute violates their First Amendment rights, not in the preparation of petitions and schedules, but rather in the their distribution. The argument rings particularly hollow when one considers the defendants' earlier point that the statements contained in the documents are those of the debtors, and not theirs. If the statements are not those of the defendants, the defendants have no constitutional grounds upon which to maintain a claim for their protection under the First Amendment. If the statements are in fact theirs, and not those of the debtors, the defendants have no constitutional right under the First Amendment or otherwise to render legal advice without a license. *See In re Doser*, 281 B.R. 292 (Bankr.D.Idaho 2002); *In re Bush*, 275 B.R. 69 (Bankr.D.Idaho 2002); *In re Farness*, 244 B.R. 464 (Bankr.D.Idaho 2000).

### CONCLUSION

"One of the primary goals of the bankruptcy laws is to provide the rehabilitated debtor emerging from the bankruptcy process with a 'fresh start.'" H.R.Rep. No. 595, 95th Cong., 1st Sess. 126 (1977); re-

printed in 1978 U.S.C.C.A.N. 6087. *In re Butcher*, 189 B.R. 357, 372 (Bankr.D.Md. 1995). To that end, Congress possesses sufficient power under the bankruptcy clause of the Constitution (Art. I, sec.8, cl.4) to enact legislation protecting debtors from anyone who, by means of fraud and deception, would interfere with their access to relief from debt under the Bankruptcy Code. This the Congress has done in enacting Section 110, and this Court has the power to enforce that legislation against the defendants, if the evidence and justice so require.

ORDER ACCORDINGLY.